WILLIAM J. WHITNEY, Appellant, *v.* THE NEW YORK CASU-
ALTY INSURANCE ASSOCIATION and THOMAS W. MCARTHUR,
Respondents.

*Malicious prosecution — facts justifying an action therefor — an attorney verifying
the information under which the warrant of arrest was issued cannot claim the pro-
tection of professional privilege.*

An insurance agent, pending a dispute between him and the insurance com-
pany as to whether he had been discharged, or under the conditions of his
employment was still entitled to act as its agent, received a small premium, of
which fact he notified the attorney of the company on the day he received it,
and two days thereafter tendered the same to the company, which refused to
receive it. Subsequently, the attorney for the company verified an informa-
tion before a justice of the peace stating that the agent "did on said 8th day
of October, 1895, with intent to deprive or defraud the true owner of the use'
and benefit of its property and to appropriate the same to his use, take from
the possession of the" insured the premium above mentioned, and procured a
warrant for the agent's arrest — who, upon a trial under such charge, was
acquitted.

In an action brought by the agent against the attorney of the company to recover
damages for a malicious prosecution, it was

*Held,* that it was improper to dismiss the complaint;

That the attorney of the company having made himself a party to the prosecu-
tion and arrest by personally swearing to the information under which the war-
rant was issued, was not in a position to claim the protection of professional
privilege in what he had done.

APPEAL by the plaintiff, William J. Whitney, from a judgment
of the Supreme Court in favor of the defendants, entered in the
office of the clerk of the county of Warren on the 25th day of
June, 1897, upon the dismissal of the complaint by direction of the
court after a trial before the court and a jury.

The defendant The New York Casualty Insurance Association is
an insurance corporation, and the defendant McArthur was, at the
time of the transactions out of which this action arose, an attorney
and counselor at law, a director of such association, and its legal
adviser.

On or about the 19th of August, 1895, the plaintiff entered into
the employ of the association, and at such time signed a written
agreement in duplicate, which he sent to the association, and also
signed a bond and procured the signature of a surety thereto, which

was also given to the association. The manner in which the bond was executed was objected to by the association, but nothing further seems to have been done about it by either party. The plaintiff was informed that a copy of the written agreement signed by him would be signed by the company and given to him; this does not appear to have been done. The association retained, however, the agreement signed by the plaintiff, and the plaintiff thereupon entered upon the discharge of his duties as provided for in the written agreement, which were to collect the premiums on insurance policies already issued and to solicit new policies.

The written agreement contained a clause that the plaintiff should not resign the agency "without giving the Association at least one full calendar month's notice in writing of his intention so to do."

The plaintiff continued in the employ of the company, making weekly collections of the premiums due, and making his reports thereon. On the fifth day of October he sent a letter to the defendant association, in which he tendered his resignation, to take effect on the twelfth day of October. On the seventh day of October the defendant association, in reply to such letter of resignation of plaintiff, sent a written communication to the effect that the plaintiff's services were no longer desired, and that his resignation under date of the fifth would take effect immediately, and directing him to turn over all books and supplies of every description furnished by the association, and to make no further collections from members in any form whatever, and to render a report of all his collections and accounts at once. In response to this communication from the association, the plaintiff, on the same day, October seventh, answered to the following effect: "As you have not accepted my resignation as it was given, I must insist upon the terms of our contract, and for this purpose I hereby notify you that on the 7th day of November, 1895, I shall sever my contract relations with you as conditions in the contract between us, and until that date I hold myself in readiness, and I hereby offer to in all things perform said contract, and I demand performance of the same upon your part."

This letter appears to have been written pursuant to the advice of counsel after the receipt of the letter from the association. In

answer to this letter, on the eighth day of October, between twelve and one o'clock, the plaintiff received, as a reply to his letter, a letter signed by the defendant McArthur, as counsel, in which the defendant McArthur used the following language : "In regard to your conforming to contract, etc., will say there is no contract in force between the New York Casualty Association and yourself, and that your services are no longer required was made known to you in our communication to you of the 7th inst., which you will kindly comply with without further delay."

After the receipt of the letter of the seventh from the association, and before receiving the letter of the eighth, the plaintiff made three collections of premiums, aggregating ninety-six cents, one of thirty cents from E. A. Kenyon. After the receipt of the letter of October eighth there was a meeting between the plaintiff and the defendant McArthur at the office of the plaintiff's attorney. The defendant McArthur asked what the plaintiff had been collecting; the plaintiff told him what he had collected; the plaintiff's attorney told the defendant McArthur that he had advised the plaintiff not to go any further, but to hold himself in readiness to report at the office.

Thereafter, on the tenth or eleventh of October, the superintendent of the association met with the plaintiff and went through his accounts, but refused to accept the money collected on the morning of the eighth of October.

On the tenth of October the plaintiff took his report together with the money collected by him, including the money collected on the eighth of October, to the office of the association, and tendered the same to the defendant association, which refused to receive it. Thereafter the plaintiff's attorney, a Mr. King, took the money that had been collected by the plaintiff to the office of the defendant association, and tendered the same to the officer in charge, who refused to receive it, because collections had been made on the eighth after plaintiff had been notified not to collect.

Thereafter, on the 15th day of October, 1895, the defendant McArthur made an application to a justice of the peace for a warrant against the plaintiff, charging him with petit larceny. The specific charge made was, "that the said William J. Whitney did, on said 8th day of October, 1895, with intent to deprive or defraud

the true owner of the use and benefit of its property and to appropriate the same to his use, take from the possession of said Kenyon the said sum of 30 cents at the time and in the manner aforesaid." The information was sworn to by the defendant McArthur. The plaintiff was thereupon arrested, plead not guilty; a trial was had before the justice and a jury, and the plaintiff was acquitted; he thereafter brought this action against the defendants for malicious prosecution. The case came on for trial, and at the close of the plaintiff's evidence a motion for a nonsuit was made by the defendants and granted.

*Edward M. Angell*, for the appellant.

*T. W. McArthur*, for the respondents.

HERRICK, J.:

In reviewing a judgment of nonsuit that view of the evidence must be taken which is most favorable to the plaintiff.

The plaintiff, upon the trial for larceny, was declared not guilty of the charge upon which the defendants had caused his arrest. And this case turns upon the question as to whether the defendants had reasonable grounds to believe him guilty of the charge they made against him.

"The question of what constitutes probable cause does not depend upon whether the offense has been committed in fact, nor whether the accused is guilty or innocent, but upon the prosecutor's belief, based upon reasonable grounds. (4 Cush. 288.) The prosecutor may act upon appearances, and if the apparent facts are such that a discreet and prudent person would be led to the belief that the accused had committed a crime, he will not be liable in this action, although it may turn out that the accused was innocent. (53 N. Y. 17.) If there is an honest belief of guilt, and there exist reasonable grounds for such belief, the party will be justified. But however suspicious the appearances may be from existing circumstances, if the prosecutor has knowledge of facts which will explain the suspicious appearances and exonerate the accused from a criminal charge, he cannot justify a prosecution by putting forth the *prima facie* circumstances, and excluding those within his knowledge

which tend to prove innocence." (*Fangan* v. *Knox*, 66 N. Y. 525, 528. See, also, *Wass* v. *Stephens*, 128 id. 123; *Williard* v. *Holmes*, 142 id. 492.)

Did then the defendants have reasonable grounds for believing that the plaintiff, in collecting the thirty cents, which they charged him with stealing, intended to deprive or defraud the association of it, or to appropriate the same to his own use?

They knew that at the time he made this collection he was engaged in correspondence with them as to his continuance with them, and that he claimed to be still in their employ; on the very day he collected the thirty cents he informed their counsel of the fact, and made a tender of that amount, with other moneys, to the association; this tender was repeated by him thereafter to the superintendent of the company, and again repeated by his attorney. The usual element in such cases of a failure to report a collection and a withholding of the money is entirely absent here.

They refused to receive the money in question upon the express ground that, at the time he made the collection, he had been discharged by them and had been forbidden to collect; they knew, however, that at the time of such refusal he had controverted the fact of his discharge and was claiming to act for them as their employee.

Assuming, however, that they were not satisfied as to the state of his accounts, and did not know how much he had collected, or whether he had accounted for all that he had collected, still they did know, from his own statement, of his collection of this particular item, knew that he was not withholding it from them or attempting to appropriate it to his own use, and that he had not only reported the same, but had repeatedly offered to pay the same to them.

Under such circumstances, I do not see that they were warranted in believing that there was any intent on his part to steal it. And conceding that he had no longer any authority or legal right to collect it, and, indeed, was prohibited from doing so, yet the mere doing of the prohibited act, unless done with a criminal intent, does not constitute a crime. (*Hewitt* v. *Newburger*, 141 N. Y. 538, 542.)

The motion for a nonsuit asked for by the defendant McArthur was upon the ground that he was acting as an attorney and coun-

selor at law, and could not be held liable for malicious prosecution, unless there was proof that he knew there was no cause of action against the plaintiff, and unless also that he knew that his client, the Casualty Insurance Association, was acting from illegal and malicious motives.

It has been held that an attorney is personally liable for an improper arrest, when he is the direct agent in causing such arrest. (*Deyo* v. *Van Valkenburgh*, 5 Hill, 242; *Sleight* v. *Leavenworth*, 5 Duer, 122.)

In this case the defendant McArthur made himself a party to the prosecution and arrest of the plaintiff by personally swearing to the information upon which the warrant of arrest was issued. If an attorney desires the protection of his professional privileges he must act solely as an attorney and counselor, and not personally become a party to the litigation; he cannot be party and counsel both; the position of counsel is swallowed up and absorbed by that of a party, and professional privilege will not serve as a shield in such a case.

And as to the facts upon which the charge against the plaintiff was made, he had personal knowledge of them, and knew that the plaintiff had made the collection under a claim of right, and, as an attorney presumed to be learned in the law, he must have known that a wrongful intent, an intent to deprive the association of the money and to appropriate the same to his own use, or the use of some person other than the true owner, was an essential element in the crime of larceny.

Even if he did not know the law, it would make no difference; "probable cause may be founded on misinformation as to facts but not as to law." (*Hazzard* v. *Flury*, 120 N. Y. 223, 227.)

Here he was not misinformed as to the facts, and they afforded no sufficient ground for his action.

"Where there is no dispute about the facts, the question of the existence of probable cause, or, as generally stated, the absence or want of probable cause, is a question for the court and not for the jury." (*Anderson* v. *How*, 116 N. Y. 336, 338.)

From the facts in this case it seems to me that there was nothing upon which a reasonably discreet and prudent man could found a belief that the plaintiff, in collecting the thirty cents, intended to

steal; and that, therefore, the trial court erred in granting the motion for a nonsuit.

Without discussing the other questions argued before us, the judgment should, for the reasons herein set forth, be reversed and a new trial granted, with costs to abide the event.

All concurred.

Judgment reversed and a new trial granted, costs to abide the event.