Nanette Dembitz, J.
This motion by the District Attorney to dismiss a complaint against him for false arrest and illegal incarceration, presents an issue of first impression: The extent of the District Attorney’s immunity from liability for damages. j
The pleadings and the motion papers show that the plaintiff was on vacation in Florida from his work in New York. While he was walking through the lobby;of a Florida hotel at about 10 a.m. on October 18, 1973, he was arrested for the purpose of securing his appearance as a material witness at a murder trial. After his arrest he was returned to New York in the custody of New York City policemen; committed to the Queens House of Detention for Witnesses;; and on the following day, October 19, was discharged from custody in New York. Plaintiff claims personal and property damage as a result of the arrest. i
The District Attorney initially argues that he complied with *545 CPL 640.10 (subd 3) with respect to the subpoenaing of an out-of-State material witness. However, CPL 640.10 (subd 3) provides that a Judge of a New York court must issue a certificate stating that the person is required as a witness; that certificate must then be presented to a Judge of a court of record in the county in which the witness is found; and the Judge of the responding State may then order the person’s arrest. The papers lend substance to the plaintiffs assertion that the District Attorney failed to comply with the CPL in that the New York certificate was obtained after the plaintiffs arrest. The District Attorney states that the certificate was issued in New York on October 18, and he does not deny plaintiffs allegation that he was arrested at about 10 a.m. on October 18 in Florida.
Thus, the first argument urged for dismissal of the complaint — that there was full compliance with the CPL — must be rejected. The Court of Appeals has indicated that the provision on out-of-State material witnesses is " 'drastic’ because it represents an incursion upon the liberty of a prospective witness, who, although accused of no crime or wrongdoing, is required to attend a criminal proceeding in another State”. (People v McCartney, 38 NY2d 618, 622.) It is clear therefore that there must be strict compliance with the requirements of CPL 640.10 (subd 3) — a section which intrudes on individual liberty and is in derogation of common or customary law.
EXTENT OF IMMUNITY
The alternate ground for dismissal urged by the District Attorney is, in his words, that he is "absolutely immune from suit for damages when performing his official duties of investigating or presenting a case.” A prosecutor’s "quasi-judicial” immunity has been long and unequivocally established; however, research has disclosed no case in New York or elsewhere as to whether it covers a prosecutor’s activities in relation to securing the appearance of a witness.
While the prosecutorial immunity is frequently called "absolute”, it is clear that this term cannot be taken literally. The purpose of the immunity is to enable prosecutors to "exercise a discretionary judgment on the basis of evidence presented to them,” in a "vigorous and fearless” manner, without fear of civil liability as a result. (Imbler v Pachtman, 424 US 409, 423, n 20, 427-428.) And an analysis of the immunity decisions *546 shows that its scope is limited by this purpose — that is, to prosecutorial acts that entail evaluation of evidence.
"There was no absolute immunity at common law for prosecutors other than absolute immunity from suits for malicious prosecution and defamation”, for the cases developing the doctrine of prosecutorial immunity were only of those two kinds. (Imbler v Pachtman, supra, p 441, concurring opn.) History thus clarifies the point that references to the prosecutor’s immunity as "quasi-judicial” mean that he is free of liability for those acts or words that involve his appraisal and interpretation of evidence. But, "when a prosecuting attorney acts in some capacity other than his quasi-judicial capacity, then the reason for his immunity * * * ceases to exist.” (Robichaud v Ronan, 351 F2d 533, 536; see, also, Hampton v City of Chicago, Cook County, Illinois, 484 F2d 602, 607; Martin v Merola, 532 F2d 191, 195, concurring opn; cf. Chappell v Dewey, 173 Misc 438, 442.)
In Imbler the United States Supreme Court recognized that "[a]t some point * * * the prosecutor no doubt functions as an administrator” and loses his immunity (Imbler v Pachtman, supra, p 431, n 33), but stated that it need not for the purpose of the case before it draw a precise dividing line between immunity and liability.[1] It seems clear that the acts at issue in the instant case fall outside the prosecutor’s immunity. No doubt the District Attorney would be immune with regard to his determination to seek plaintiff’s appearance as a witness, or his presentation of evidence in support of an application for a certificate requesting the plaintiffs delivery into New York’s custody. However, his immunity would not extend to his failure to follow the procedure provided by CPL 640.10 (subd 3) with respect to securing a certificate from a New York Judge and dispatching it to an out-of-State Judge before the arrest of an out-of-State material witness. The District Attorney’s obligation to comply with the prescribed procedural steps involved no evaluation of I evidence, nor exercise of discretion, and instead resembled an administrative duty as the term was used in Imbler. Further, in seeking an arrest without following this procedure, the District Attorney clearly would be acting outside the scope of his powers and thus would be liable under the principle stated in Gregoire v Biddle (177 F2d 579, 581): "The decisions have, indeed, always im *547 posed as a limitation upon the immunity that the official’s act must have been within the scope of his powers”.
The cases cited on behalf of the District Attorney support rather than contradict the principle that the District Attorney’s immunity extends only to conduct involving discretion and the interpretation of evidence. For decisions upholding immunity, defendant cites Schanbarger v Kellogg (35 AD2d 902, cert den 405 US 919) and Carpenter v City of Rochester (67 Misc 2d 832), which were suits for malicious prosecution and for detention resulting from motions for a party’s psychiatric examination; Manceri v City of New York (12 AD2d 895) an action for defamation for "words spoken by an Assistant District Attorney * * * while performing such [official] functions”; Zimmerman v City of New York (52 Misc 2d 797) a suit on the basis of plaintiff’s alleged innocence and the District Attorney’s presentation of evidence at the trial; Gregoire v Biddle (supra) involving the weight of evidence as to plaintiff’s nationality; and Yaselli v Goff (12 F2d 396, affd 275 US 503), an action for malicious prosecution.[2]
In sum, the District Attorney does not have an absolute immunity with regard to the procedural steps that were required in order to secure plaintiff’s lawful arrest in Florida and delivery into New York’s custody for transportation to New York as a material witness. The District Attorney’s motion to dismiss the complaint is denied.
It may be noted that the District Attorney might well have a qualified immunity if neither he nor his assistants had personal knowledge that a procedural step had been omitted (see Carpenter v City of Rochester, supra, p 834), similar to the qualified immunity on the basis of good faith that was developed in a series of cases where "a prosecutor engaged in certain investigatory activities”. (Imbler v Pachtman, supra, p 430.)

. The Imbler cause of action was based on the prosecutor’s presentation of evidence at trial.

. The other cases cited by defendant are People v Fielding (158 NY 542, 547) and Matter of Prentice v Gulotta (13 Misc 2d 280) which merely relate to the general status of the District Attorney as a quasi-judicial officer, and Cheatum v Wehle (5 NY2d 585) concerning the immunity of executive officials.