OPINION OF THE COURT
Elizabeth W. Pine, J.
Defendant County of Monroe (county) moves, in two companion cases argued together, to dismiss both actions on the grounds that (1) this court lacks subject matter jurisdiction (CPLR 3211, subd [a], par 2); (2) both actions are barred by the Statute of Limitations (CPLR 3211, subd [a], par 5); and (3) the complaints fail to state a cause of action (CPLR 3211, subd [a], par 7). Defendant county also moves for summary judgment against plaintiffs (CPLR 3212).
Defendant City of Rochester (city) cross-moves to dismiss the complaint (CPLR 3211, subd [a], par 5) and for summary judgment (CPLR 3212) solely on the ground that the instant actions are barred by the Statute of Limitations.
*89 With respect to defendant county’s motion to dismiss for legal insufficiency, the allegations of plaintiffs’ complaints must be assumed true (Cohn v Lionel Corp., 21 NY2d 559). The pertinent facts relating to defendants’ Statute of Limitations defense and defendant county’s subject matter jurisdiction claim are not in dispute.
On the morning of June 16, 1976, plaintiff Darrell Drake, while on lawful business of his own at the Hall of Justice in Rochester, New York, was approached by two persons identifying themselves as officers of the Police Department of the City of Rochester, and was served with a Grand Jury subpoena, which purported to have been issued, the same day, by the office of the Monroe County District Attorney. The subpoena commanded plaintiff to appear "Forthwith * * * before the grand jury of the County of Monroe, at the Hall of Justice, in the City of Rochester * * * as a witness in a criminal action” against John Doe. On the purported authority of the Grand Jury subpoena, plaintiff was detained and escorted by police out of the Hall of Justice, under duress and against plaintiff’s will, and driven to a police station located at 285 Waring Road, Rochester, New York. In the police station, in the absence of a Grand Jury, and in the presence of a police officer and an Assistant District Attorney, plaintiff Drake was detained and interrogated against his will during a period of two to three-hours’ duration.
The next day, June 17, 1976, plaintiff Mary Boulet was served, by two persons arriving at her apartment and identifying themselves as detectives of the Police Department of the City of Rochester, with a Grand Jury subpoena dated June 17, 1976 which purported to have been issued by the office of the Monroe County District Attorney. The subpoena commanded plaintiff Boulet to appear "Forthwith before the grand jury of the County of Monroe, at the Hall of Justice, in the City of Rochester * * * as a witness in a criminal action” against Silas Murray and Douglas Curry. Plaintiff Boulet, her complaint alleges, was neither brought before a Grand Jury, nor even to the Hall of Justice. Instead, on the purported authority of the Grand Jury subpoena, plaintiff Boulet was detained and escorted by police to a police station located at 285 Waring Road, Rochester, New York. In the police station, absent a Grand Jury — and, differing from the case of plaintiff Drake, absent even the District Attorney or an Assistant District Attorney — plaintiff Boulet was detained and interro *90 gated, against her will, by or in the presence of three police officers during a period of two and one-half to three hours.
Plaintiffs — neither having been brought before the Grand Jury to which they were purportedly subpoenaed — have each commenced an individual civil action against defendants city and county. Plaintiffs’ complaints each contain four legal claims: (1) false arrest and false imprisonment, (2) abuse of process, (3) denial of rights secured under the laws and Constitutions of the United States and the State of New York,[1] and (4) negligence.
Among the moving papers of defendant county is an affidavit of the Assistant District Attorney upon whose "direction” the Grand Jury subpoenas were issued and served upon plaintiffs. In his affidavit, this Assistant District Attorney states that the subpoenas were issued in connection with the investigation of crimes possibly committed against patients at the Monroe Developmental Center, and that neither Mary Boulet nor Darrell Drake was ever suspected of any such crimes.
The affidavit of the Assistant District Attorney notes that it was "obviously easier” to assist the police in their investigation at the Waring Road Police Station than to proceed at the Hall of Justice, and that accordingly, "the grand jury subpoenas in question were not made returnable in the Hall of Justice, but * * * at the Waring Road Police Station(Emphasis added.) The court notes that the Assistant District Attorney, in his affidavit, does not controvert plaintiffs’ claim that there was no Grand Jury convened in Monroe County on either of the days that plaintiffs were subpoenaed to testify. The office of the District Attorney had clear statutory authority to request that the Grand Jury be "reconvened for the purpose of dealing with a matter requiring grand jury action” (CPL 190.15, subd 2). Defendants have not said that such application was ever made, and it appears that there was no Grand Jury convened, and none expected to be convened, to hear the testimony for which the Assistant District Attorney "directed” the issuance of the Grand Jury subpoenas to plaintiffs — "testimony” elicited instead during plaintiffs’ involun *91 tary detention and interrogation at the Waring Road Police Station.
I. subject matter jurisdiction (CPLR 3211, subd [a], par
2)
Defendant county moves to dismiss the instant action for lack of jurisdiction over the subject matter of this action (CPLR 3211, subd [a], par 2). Defendant county’s moving affidavits and memoranda of law do not really address this motion, and no legal basis for granting it appears. The motion is accordingly denied. (NY Const, art VI, § 7; Judiciary Law, § 140-b; see, generally, CPLR 2214, subd [a].)
II. statute of limitations (CPLR 3211, subd [a], par 5)
The city and county defendants both move to dismiss the plaintiffs’ claims on the ground that they are barred by the Statute of Limitations. The facts are not in dispute, the issue at bar being one of identifying the applicable statute.
The events upon which plaintiff Drake’s and plaintiff Boulet’s claims are based occurred on June 16 and 17, 1976, respectively. Notices of claim were concededly timely served upon defendants, pursuant to section 50-e (subd 1, par [a]) of the General Municipal Law, on September 14 (Drake action) and September 15, 1976 (Boulet action). At issue is the timeliness of the summonses with notice served in both actions on September 14, 1977.
Defendants — without any real consistency as to which of plaintiffs’ four causes of action are allegedly time-barred, and solely upon the basis of the one-year period of limitation of CPLR 215[2] — urge that plaintiffs’ complaints be dismissed, presumably in their entirety, pursuant to CPLR 3211 (subd [a], par 5). For the reasons indicated below, the court holds that each of plaintiffs’ claims was timely interposed within the one year and 90-day limitation of section 50-i (subd 1, par [c]) of the General Municipal Law.
Defendants note that at least some of plaintiffs’ claims sound in "false imprisonment,” a term which does appear in *92 CPLR 215. However, section 50-i of the General Municipal Law provides, in pertinent part:
"§ 50-i. Presentment of tort claims; commencement of actions.
"1. No action * * * shall be prosecuted or maintained against a city * * * [or] county * * * for personal injury * * * alleged to have been sustained by reason of the negligence or wrongful act of such city * * * [or] county * * * or of any officer, agent or employee thereof * * * unless * * * (c) the action * * * shall be commenced within one year and ninety days after the happening of the event upon which the claim is based.
"2. This section shall be applicable notwithstanding any inconsistent provisions of law, general, special or local, or any limitation contained in the provisions of any city charter.”
This section, by its terms, supersedes any inconsistent provisions of law. The issue, then, reduces itself to whether plaintiffs’ claims constitute claims for "personal injury” alleged to have been sustained by reason of the negligence or wrongful act of the city or county or of any of their officers, agents or employees within the meaning of subdivision 1 of section 50-i of the General Municipal Law.
Defendant city argues that plaintiffs’ claims are not "personal injury” claims within the meaning of this provision. The caption of this section itself reflects that the section governs more than negligence claims: the Legislature’s selection of the term "tort claims” makes this plain. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 123, subd b.) Moreover, if one simply reads CPLR 215 (the statute upon which defendants rely) in the context of the other CPLR article 2 provision to which it constitutes an exception, it is clear that a narrow reading of the term "personal injury” is untenable. CPLR 214 creates a three-year limitation period for "an action to recover damages for personal injury except as provided in section 215.” This alone suggests that actions to recover damages for false imprisonment and for the claims enumerated in CPLR 215 (subd 3) are "personal injury” claims otherwise within the ambit of CPLR 214, and casts doubt upon the city’s assertion that plaintiffs’ claims are not "personal injury” claims within the meaning of section 50-i of the General Municipal Law.
Further clarification of this statutory language appears in section 37-a of the General Construction Law (personal injury), which provides: "’Personal injury’ includes libel, slander *93 and malicious prosecution; also an assault, battery, false imprisonment, or other actionable injury to the person of the plaintiff, or of another.” As a matter of law the term "personal injury” as used in section 50-i of the General Municipal Law must be so read unless a contrary intention is clearly indicated. (General Construction Law, § 110; see, e.g., Matter of Crosby v Van Valkenburgh, 178 Misc 746, affd 265 App Div 92.) The city’s observation that the legislative history of section 50-i of the General Municipal Law does not contain "any indication that the phrase, 'personal injuries,’ in § 50-i was meant to include false imprisonment and malicious prosecution” fails to establish that any contrary construction was intended, and, suggests that the drafters of this section selected a term already defined by law.[3]
On the basis of the foregoing, the court holds that plaintiffs’ first, second and fourth claims, which all sound in common-law tort against defendants, were timely commenced pursuant to section 50-i of the General Municipal Law. (See Szerlip v Finnegan, 77 Misc 2d 655, affd 47 AD2d 603.) Whether plaintiffs’ third claims for denial of rights secured under the laws and Constitutions of the United States and the State of New York are also governed by the limitations of section 50-i of the General Municipal Law is less clear. Plaintiffs’ third causes of action are principally constitutional claims involving issues of due process, equal protection, freedom from self incrimination, and freedom from unreasonable search and seizure. However, unlike the claims raised in Cooper v Morin (50 AD2d 32, holding General Municipal Law, § 50-e notice of claim provision inapplicable), plaintiffs’ third claims were not commenced pursuant to section 1983 of title 42 of the United States Code. Moreover, they are not primarily equitable in nature. (See, also, Grant v Town of Kirkland, 10 AD2d 474, holding General Municipal Law, § 50-e notice of claim provision inapplicable.) In its search for the controlling New York Statute of Limitations in a suit involving a claim based directly upon the Fourteenth Amendment to the United States Constitution, the Second Circuit has observed: "For purposes of this case, we believe the one year and ninety day period of limitation provided by New York’s General Municipal Law § 50-i, governing tort claims against municipalities, would appear to be 'the most appropriate one provided by state law.’ ” (Fine v City of New York, 529 F2d 70, 76, on *94 remand 71 FED 374.) Under the circumstances of the instant case, the court holds that plaintiffs’ third causes of action are entitled at least to the benefit of that Statute of Limitations, and are accordingly timely. Defendants’ motions to dismiss pursuant to CPLR 3211 (subd [a], par 5) are accordingly denied.
III. LEGAL SUFFICIENCY OF PLAINTIFFS’ COMPLAINTS (CPLR 3211, subd [a], par 7)
Defendant county challenges the legal sufficiency of plaintiffs’ complaints on two grounds: first, that, assuming the truth of the allegations of plaintiffs’ complaints, defendant county cannot, as a matter of law, be vicariously liable for any of the alleged acts and omissions of either the Monroe County District Attorney or his assistants or the city police officers with and through whom he allegedly conducted his investigation; and second, that, even if the county might otherwise be liable, it is entitled to share in the alleged immunity of the District Attorney or Assistant District Attorney in connection with the acts and omissions alleged in the instant actions.
A. POSSIBLE VICARIOUS LIABILITY OF DEFENDANT COUNTY FOR ACTS AND OMISSIONS ALLEGED IN PLAINTIFFS’ COMPLAINTS
The District Attorney, like the Sheriff, is an elected constitutional officer; his office, like that of the Sheriff, is created and governed by article XIII (§ 13, subd [a]) of the New York Constitution. This provision expressly states that "the county shall-never be made responsible for the acts of the sheriff.” (See, also, Williams v Town of Irondequoit, 59 AD2d 1049, constitutional bar against county liability for acts of Sheriff.) Our Constitution, however, goes no further: it fails to extend to the county any corresponding categorical insulation against possible liability for the acts of its District Attorney.
Finding no constitutional impediment in plaintiffs’ claim of the vicarious liability of defendant county, the court turns to the statutory and case law bearing upon this issue.
Subdivision 1 of section 53 of the County Law, a statute declaratory of the "extended” waiver of sovereign immunity expressed in the landmark decision of the Court of Appeals in Bernadine v City of New York (294 NY 361), provides that, *95 where notice of claim is duly made "each county shall be liable under the same rules of law applicable to the state, for damage or injury, or death, to person or property sustained by reason of the torts of its officers, agents, servants and employees.” (See, generally, Fifth Report of Joint Legis Committee on Municipal Tort Liability, NY Legis Doc; 1959; No. 36, p 85.)
Under this provision, liability may fall upon a county for the acts of an "officer, agent, servant or employee.” It is clear from this language that a master-servant relationship is not a sine qua non of county liability under subdivision 1 of section 52 of the County Law. (Cf. Zimmerman v City of New York, 52 Misc 2d 797, 801.) The act of a county officer, agent or employee, as well as that of a "servant,” may give rise to imputed liability.
The assertion of defendant county that the District Attorney is not a "county officer,” within the meaning of section 53 of the County Law, is not persuasive. It is already established that the District Attorney is not a "State officer” subject to suit in the Court of Claims. (Fisher v State of New York, 23 Misc 2d 935, affd 13 AD2d 608, affd 10 NY2d 60; Whitmore v State of New York, 55 AD2d 745, mot for lv to app den 42 NY2d 810.) Although the Court of Appeals, in Fisher, did not reach the issue of which level of government, if not the State, might be liable for the torts of an Assistant District Attorney, the case of Ritter v State of New York (283 App Div 833), from which the Court of Appeals drew heavily in Fisher, uses language strongly suggesting that the Assistant District Attorney is instead a person for whose acts the county may be liable.
The proposition that a District Attorney is a county officer finds considerable support in the County Law. The District Attorney, clearly including the Monroe County District Attorney (County Law, § 825), is enumerated in subdivision 1 of section 400 of the County Law as a county officer. Section 825 and subdivision 1 of section 702 of the County Law further empower the Monroe County District Attorney to appoint — to the extent authorized by resolution of the county board of supervisors — a number of Assistant District Attorneys. The District Attorney and his assistants must, by statute, both take and file oaths of office. (County Law, §§ 402; 400, subd 5; § 102, subd 1; § 825.) Failing this, the District Attorney lacks authority to act and is not entitled to compensation, and the *96 Assistant District Attorney is deemed to have refused to serve, and his office may be filled as in the case of a vacancy. (County Law, § 402.) Similarly, the District Attorney and (to the extent demanded by the District Attorney or the county board of supervisors) the Assistant District Attorney must file an official undertaking in an amount controlled by the county board of supervisors. (County Law, §§ 403; 400, subd 5; § 702, subd 1.) Failing this, the same consequences ensue as follow from a failure to take and file an oath of office. The county board of supervisors, moreover, has the power to direct a further undertaking if "the sureties are deemed insufficient and the money and property of the county may be unsafe”. (County Law, § 403.)[4] In view of the foregoing, the court holds that the Monroe County District Attorney is a county officer within the meaning of subdivision 1 of section 53 of the County Law, and that he is liable for the official acts of his assistants. Moreover, Assistant District Attorneys are either county officers in their own right or county employees within the meaning of subdivision 1 of section 53 of the County Law.
This being the case, the county may be vicariously liable if, in addition, the acts of such officers or employees were official acts. This question is sufficiently resolved by the affidavit of the Assistant District Attorney submitted to the court by defendant county. Defendant county does not suggest that the alleged acts of the Assistant District Attorney were personal in nature, or that they amounted to a detour not purportedly performed in his official capacity. In his affidavit, the Assistant District Attorney who "directed the issuance” of Grand Jury subpoenas "not made returnable in the Hall of Justice, but * * * at the Waring Road Police Station” expressly asserts that he directed this activity in his capacity as Assistant *97 District Attorney. For purposes of these motions, at least, he has established that his acts were official acts.
Further bearing upon the issue of the vicarious liability of the county for acts of the Assistant District Attorney, under subdivision 1 of section 53 of the County Law, are the provisions of section 54 and subdivision 2 of section 409 of the County Law. Section 54 of the County Law, discussed earlier, makes any liability of the District Attorney for the acts of his subordinates (see County Law, § 825) a liability of the county. Subdivision 2 of section 409 of the County Law provides that any damages and costs recovered against an officer whose compensation is paid from county funds in defense of a civil action for an official act shall be a county charge. While neither of these sections is indispensable to a holding that the county, under subdivision 1 of section 53 of the County Law, may be vicariously liable for the acts of the Assistant District Attorney in the instant case, each is entirely consistent with that proposition. (See, generally, Fifth Report of Joint Legis Committee on Municipal Tort Liability, NY Legis Doc, 1959, No. 36, pp 88-90.)
Based upon the court’s determination that defendant county may be vicariously liable for the acts of the Assistant District Attorney, the court also holds that defendant county may similarly be liable for the acts of the Rochester City Police who "executed” the Grand Jury subpoenas issued at the direction of the Assistant District Attorney and who participated in the ensuing interrogations at the Waring Road Police Station. The office of the District Attorney seemingly having procured, and having participated in or ratified the acts of the city police in the instant cases, plaintiffs are entitled to the opportunity to establish, at trial, that such police officers acted as agents of defendant county in performing the acts alleged in the complaints. By no means dispositive of this question is the fact that such police officers were employees of the City of Rochester rather than of the County of Monroe. (See Enstrom v Matthews, 258 App Div 672, mots to reargue and for lv to app den 259 App Div 832, mot for lv to app den 283 NY 777; see, generally, Parke-Bernet Galleries v Franklin, 26 NY2d 13.)
B. THE IMMUNITY CLAIM
Defendant county argues that, on the facts of the instant cases, the alleged acts of the Assistant District Attorney were, *98 in any event, within the scope of his immunity, and cannot serve as a basis for county liability.
In Bernadine v City of New York (294 NY 361, 365), the Court of Appeals held that none of the civil divisions of the State — its counties, cities, towns and villages — has any sovereignty independent of that of the State, and that "The legal irresponsibility heretofore enjoyed by these governmental units was nothing more than an extension of the exemption from liability which the State possessed.”
New York State’s waiver of sovereign immunity, and its "extension” in Bernadine, however, did not sound the death-knell of all governmental immunity in New York. Under Urquhart v City of Ogdensburg (91 NY 67), and the line of cases which follow from it — the vitality of which has survived the State’s waiver of sovereign immunity and its "extension” in Bernadine — neither the State nor its civil divisions may be held liable for so-called quasi-judicial or discretionary acts. (Weiss v Fote, 7 NY2d 579.)
In reality, there are two separate issues presented with respect to defendant county’s immunity argument. First, the court must determine whether the acts alleged were encompassed within the quasi-judicial or absolute immunity of the District Attorney or Assistant District Attorney. If so, the court must grant the county’s motions with respect to county liability for their acts or for the acts of those acting under them; if not, the court must then determine whether such acts may fall outside the good faith defense of qualified immunity otherwise available to one performing official acts. (See, e.g., Bozeman v City of Buffalo, 62 Misc 2d 967, 972, affd without opn 34 AD2d 892.)
The legal basis for the steps taken in the cases before the court by or at the direction of the District Attorney or his assistant bears directly upon the immunity issue. Although investigation is, for the District Attorney or his assistant (as for the police officer), a necessary component of his work, he may carry forward such investigation by the issuance of Grand Jury subpoenas only within the bounds of the law relating to such legal process. CPL 610.10 (subd 2) defines a subpoena as "a process of a court directing the person to whom it is addressed to attend and appear as a witness in a designated action or proceeding in such court”. (Emphasis added.) CPL 610.20 (subd 2) further provides: "A district attorney, or other prosecutor where appropriate, as an officer *99 of a criminal court in which he is conducting the prosecution of a criminal action or proceeding, may issue a subpoena of such court, subscribed by himself, for the attendance in such court or a grand jury thereof of any witness whom the people are entitled to call in such action or proceeding.” (Emphasis added.)
As noted earlier, the law does confer upon the District Attorney the power, where there is no Grand Jury convened, to request of the court that the Grand Jury be "reconvened for the purpose of dealing with a matter requiring grand jury action.” (CPL 190.15, subd 2.) Plainly, however, in a State in which the law, made known to each member of a Grand Jury (CPL 190.20, subd 5), provides for Grand Juries of no less than 16 grand jurors, each to be sworn as such by a court (CPL 190.25, subd 1), no legal advisor (CPL 190.25, subd 6) of a Grand Jury may be heard to say that he was engaged in a "quasi-judicial” act when, there being no Grand Jury convened, he concededly "directed the issuance”[5] of Grand Jury subpoenas returnable — "forthwith”—at a police station.
These same Grand Jury subpoenas have been discussed in a decision on a motion to dismiss charges against the husband of plaintiff Boulet and others. The court stated that the law does not "empower a District Attorney to subpoena witnesses to attend his office or any other place where a Grand Jury is not sitting or where a court is not convened in an action or proceeding.” (People v Boulet, 88 Misc 2d 353, 354.) Moreover, as noted in the foregoing decision, American Bar Association standards provide that "[i]t is unprofessional conduct for a prosecutor to secure the attendance of persons for interviews by use of any communication which has the appearance or color of a subpoena or similar judicial process unless he is authorized by law to do so.” (American Bar Association Standards Relating to Administration of Criminal Justice, Prosecution Function, § 3.1, subd [d].)
In Imbler v Pachtman (424 US 409), the United States Supreme Court examined, in part, the scope of prosecutorial immunity. Expressly not passed upon, however, was the question of whether the prosecutor acting in the role of an investigative officer, rather than in that of an advocate, is invariably *100 entitled to absolute — rather than to qualified, or good faith— immunity for such acts. While Imbler involved prosecutorial activities "intimately associated with the judicial phase of the criminal process” (Imbler v Pachtman, 424 US 409, 430, supra), the court added the caveat (supra, p 431, n 33) that "At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court. Drawing a proper line between these functions may present difficult questions, but this case does not require us to anticipate them.” In the instant cases, there is no allegation that plaintiffs were at any time charged with or suspected of criminal activity, so that they were never subject to lawful arrest, either with (CPL art 120) or without (CPL art 140) a warrant. Moreover, even judicial subpoenas do not in themselves authorize the use of physical force to bring about compliance. If a recipient fails to comply, the court may issue a warrant. (CPLR 2308, subd [a].) Under these circumstances, the prosecutor was essentially engaged in police activity well outside his quasi-judicial capacity; for such acts, a good faith defense, or qualified rather than absolute immunity, is available to him. (See Broughton v City of New York, 91 Misc 2d 543; Tomko v Lees, 416 F Supp 1137; Briggs v Goodwin, 569 F2d 10, petition for cert filed 46 USLW 2178 [all citing Imbler]. See, also, Robichaud v Ronan, 351 F2d 533.) An Assistant District Attorney who undertakes to direct the issuance of legal process when he lacks any basis in law for doing so does not thereby confer upon himself absolute immunity for his acts. In Dean v Kochendorfer (237 NY 384), our Court of Appeals, in a unanimous opinion by Judge Pound, extended no such immunity to a Magistrate who knowingly issued legal process without a sufficient legal basis for its issuance. Private attorneys, who also have occasion to issue legal process, and the power to do so to the extent provided by law (see, e.g., CPL 610.20, subd 3), are also subject to liability if they pervert the processes of the law from their proper use and design in order to reach a result other than by ordinary and legitimate procedure. (See, e.g., Whitney v New York Cas. Ins. Assn., 27 App Div 320; Dishaw v Wadleigh, 15 App Div 205.) The court finds distinguishable from the instant case the case of Brenner v County of Rockland (92 Misc 2d 833) holding that a District Attorney alleged to have withheld exculpatory evidence from a Grand Jury, given improper advice to a Grand Jury, suppressed and concealed evidence and conspired with others to obtain a Grand Jury indictment, permitted the *101 presentation of false and misleading testimony to a Grand Jury, and took no action to correct the same was immune from liability. Such activities, all involving the exercise of discretion of the District Attorney in connection with actual Grand Jury proceedings, were held entitled, under Imbler (424 US 409) to absolute immunity as quasi-judicial functions. The court, in Brenner, in fact expressly noted that no evidentiary facts were submitted to support the contention that the District Attorney had engaged in improper investigation or failed to take correct administrative steps, and that no evidentiary facts were before the court that might establish any basis for liability other than Grand Jury activity. The case of Manceri v City of New York (12 AD2d 895), a pre-Imbler memorandum decision flatly stating, seemingly without any limitation, that "the investigation of criminal charges and interrogation of persons in connection therewith” constitute quasi-judicial activity, is precedent which, on the facts of the instant case, this court declines to follow.
This court holds that the county may be liable for the acts of an Assistant District Attorney or those acting under his direction if those acts are outside both the absolute immunity of quasi-judicial activity, and the qualified immunity of investigatory activity, and that plaintiffs therefore have pleaded causes of action in these cases. The motion to dismiss for failure to state a cause of action must be denied.
The motion for summary judgment must be denied because triable issues of fact have been raised.[6]
The parties, since the cross motion of defendant city, have *102 treated the two closely related actions before the court as if they were consolidated, and the court orders that these actions be consolidated. (CPLR 602, subd [a].)

. In their third claims for relief, plaintiffs allege, in particular, violations of their rights "not to be deprived of life, liberty or property without due process of law * * * to equal protection of the laws * * * not to be compelled to be a witness against one self [sic], and * * * to be secure * * * against unreasonable search and seizure.”

. CPLR 215 provides, in part: "The following actions shall be commenced within one year * * * 3. an action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing special damages, or a violation of the right of privacy under section fifty-one of the civil rights law”.

. General Construction Law, § 37-a.

. Section 825 of the County Law provides that the District Attorney shall be responsible for the acts of the Assistant District Attorney.
Further, irrespective of whether the Assistant District Attorney is required to file his own official undertaking, "Any default or misfeasance in office” of the Assistant District Attorney "shall be deemed a breach of the undertaking of the county officer appointing him as well as a breach of the undertaking furnished by [himself]”. (County Law, § 403.)
Moreover, section 54 of the County Law provides that "No head of an agency, department, bureau or office of a county shall be liable to respond in damages to the county or to any other person for any act or omission of any employee of the county employed within the agency, department, bureau or office of which he is such head. Any lawful claims which but for this section would be claims against such head * * * shall be lawful claims against the county and shall be deemed to be the liability of the county.”

. This equivocal language follows that of the affidavit of the Assistant District Attorney before this court. But, see, CPL 610.20 (subd 2), requiring that a Grand Jury subpoena be "subscribed by [the District Attorney or other prosecutor where appropriate] himself’.

. Carpenter v City of Rochester (67 Misc 2d 832, affd without opn 39 AD2d 1018) does not stand for the proposition — for which it is cited by defendant county — that civil liability may never be imposed upon a county for the activities of a District Attorney’s office. In fact, the court, in Carpenter, considered the motions of the Assistant District Attorney and the County of Monroe together and, in granting their motions, clearly noted that, on different facts, the result might have been otherwise (supra, p 836): "While it is true that an unsworn information is jurisdictionally defective * * * a failure to file an information or the filing of a defective information should not expose an Assistant District Attorney * * * to liability for civil suit unless it is alleged that [he] had express knowledge of a lack of jurisdiction in the court and continued, after acquiring such knowledge, either individually or in concert, to expressly conduct [himself] in a manner calculated to injure the plaintiff.” (Emphasis added.) As the United States Supreme Court noted in Imbler (424 US 409), the procedural difference between absolute and qualified immunity is an important one. Absolute immunity defeats a suit at the outset — if the official’s actions were within the scope of that immunity. On the other hand, "The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trials.” (Imbler v Pachtman, 424 US 409, 419, n 13, supra.)