Arthur BARNETT; Mary Barnett; Robert L. Perry; Debra Palmer; Lester Brown, Plaintiffs,

v.

Edward John DILLON; Gregg DeLuca; Village of Herkimer; Village of Herkimer Police Dept.; County of Herkimer, New York; John Doe; Jane Doe, Defendants.

Civ. No. 92–CV–1137.

United States District Court, N.D. New York.

June 22, 1995.

Joseph B. Pachura, Jr., Utica, NY, for plaintiffs.

Gorman, Waszkiewicz, Gorman & Schmitt, (William P. Schmitt, of counsel), Utica, NY, for defendants Dillon, DeLuca, Village of Herkimer & Village of Herkimer Police Dept.

Carl J. Cochi, Utica, NY, for defendant, County of Herkimer, New York.

Horigan, Horigan, Pennock and Lombardo, P.C., (Carrie McLoughlin Noll, of counsel), Amsterdam, NY, for non-party Herkimer County Dist. Atty.

### *MEMORANDUM–DECISION & ORDER*

HURD, United States Magistrate Judge.

This matter is before the court pursuant to various motions filed by all parties, as outlined below. Oral arguments were heard on April 20, and May 25, 1995. The court granted defendant Dillon's motion to vacate the entry of default, and reserved decision on the remaining motions.

### *FACTS*

These civil rights actions arose from the arrest and indictment of the plaintiffs herein, allegedly based upon information and testimony from the defendant Edward John Dillon. Dillon was a Village of Herkimer ("Village") police officer at the time of plaintiffs' arrests.

Sometime in the late 1980's the then-district attorney of Herkimer County ("County") Patrick Kirk developed a "concept," which he used as the basis for application for federal grant monies. The federal grant was to be used to aid local municipalities in the County to increase drug enforcement. As the federal grant application required a name, Kirk termed his concept as the "Herkimer County Drug Task Force" ("Task Force").

Part of the grant money went to municipalities for drug enforcement equipment. The other portion of the grant money was used to pay for local police officers' time

spent in drug enforcement. Local police officers who performed drug enforcement activities were paid by the localities. The localities in turn submitted vouchers for payment by the County. Dillon worked full time in undercover drug enforcement, and labeled himself as a Task Force officer. It was during Dillon's tenure as a Task Force police officer that the incidents occurred upon which this action is based.

## DISCUSSION

### I. Defendants' Summary Judgment Motions & Motion to Dismiss

#### A. Summary Judgment Standard

■■ Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. Thus, summary judgment is proper where there is "little or no evidence . . . in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

#### B. County of Herkimer

■■ The plaintiffs' claims against the County are based upon a policy of the County, specifically the lack of training and supervision of Dillon while he was a "member" of the Task Force. A § 1983 claim against a local government entity may be based upon a pattern, policy or practice of failure to train its employees. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993); *Mendoza v. City of Rome*, 872 F.Supp. 1110, 1117 (N.D.N.Y.1994); *see also Monell v. Department of Social Servs. of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978) (municipality may be liable under § 1983 only where official policy causes the constitutional violation). Such a policy may be inferred from circumstantial evidence; however, recitation of a single incident is generally insufficient to raise an inference. *Dwares*, 985 F.2d at 100; *Mendoza*, 872 F.Supp. at 1117.

■■ Here the plaintiffs rely upon Dillon's connection with the Task Force, and in turn the Task Force's connection with the County, in their claims. Plaintiffs allege that the Task Force was a County entity. However, the Task Force had no stationery and no bank account. Further, the plaintiffs have put forth no solid evidence that the Task Force existed as an entity. On the other hand, the County put forth the sworn testimony of the County Attorney and the then-District Attorney, that the County never officially established the Task Force as an entity. Finally, no persons were employed and paid by the Task Force or the County. Rather, federal grant money received by the County was used to reimburse localities for expenditures in drug enforcement activities

at the local level. The County could not have a policy or practice related to a nonexistent Task Force entity, upon which municipal liability could be based.

■ Moreover, even if the Task Force did exist, plaintiffs' claim must fail. Although plaintiffs allege multiple incidents of misconduct by Dillon, they allege only one incident of failure to train and supervise. That is, they only allege and set forth facts in opposition to this summary judgment motion related to one incident: the County's failure to train and supervise Dillon. This is insufficient to raise an inference of a policy or practice of failure to train or supervise. The court finds, therefore, that no genuine issue of material fact exists and the County is entitled to judgment as a matter of law.

## C. Remaining Defendants

■ Defendants DeLuca, Village of Herkimer, and Herkimer Police Department also move for summary judgment. Defendant Dillon's motion to dismiss is based upon the documents submitted by DeLuca, Village of Herkimer, and Herkimer Police Department. Therefore, the court will treat Dillon's motion as one for summary judgment, *see* Fed. R.Civ.P. 12(b), and consider it with the others. The motions are based upon probable cause for the arrest and prosecution; lack of custom, policy or practice; qualified immunity; lack of separate legal existence of the Police Department; and time bar of the state law claims.

■ Favorable termination of the criminal proceedings is an essential element of a malicious prosecution claim. *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1154 (2d Cir.1995). Here the malicious prosecution claims must fail as a matter of law because the criminal proceedings were not terminated in favor of plaintiffs. The criminal proceedings were dismissed in the interests of justice, and it is undisputed that the reason was the prosecutions' unwillingness to call Dillon as a witness after he himself was arrested on drug-related charges. Thus, it cannot be said that the dismissal was on the

merits and indicative of plaintiffs' innocence. *See Pinaud,* 52 F.3d at 1154.

■ The remaining defendants argue that plaintiffs' state law claims are barred by the one-year statute of limitations set forth in New York Civil Practice Law and Rules Section 215.[1] However, a one year and ninety-day period for filing suit against municipalities and their employees clearly applies in this case. *See* N.Y.Gen.Mun.Law § 50–i (McKinney 1986); *Drake v. City of Rochester,* 96 Misc.2d 86, 93, 408 N.Y.S.2d 847 (1978); *Szerlip v. Finnegan,* 77 Misc.2d 655, 657, 354 N.Y.S.2d 555 (1974) (period set forth in § 50–i supersedes that in § 215), *aff'd,* 47 A.D.2d 603, 365 N.Y.S.2d 1016 (2d Dep't 1975). Plaintiff Lester Brown commenced this action on December 7, 1992, more than one year and ninety days after February 2, 1991, the date his action accrued. Thus, any state law claims by Brown are time barred. *See* N.Y.Gen.Mun.Law § 50–i. However, the other plaintiffs filed their actions within the one year and ninety-day period; therefore, those claims are not time barred.

After a thorough review of the voluminous documents submitted in support of and in opposition to the motions, the court finds that genuine issues of material fact remain for trial in all the remaining claims and defenses.

## II. *Plaintiffs' Motions to Compel*

### A. Herkimer County District Attorney's Office

Plaintiffs subpoenaed the Herkimer County District Attorney's ("DA") office. Nonparty DA cross-moved to quash the subpoena and for a protective order.

The subpoena first directs production of the application and all documentation regarding the Herkimer County Drug Task Force or any like entity prepared or submitted by then-DA Patrick Kirk in 1988 and 1989, as well as numerous other documents relating to the Drug Task Force. The DA states that no writings exist in its possession relating to

---

1. The court notes that it is well established that the three-year limitation period set forth in § 214 of the New York Civil Practice Law and Rules applies to claims brought under 42 U.S.C. § 1983. *See Taylor v. Mayone,* 626 F.2d 247, 251 (2d Cir.1980).

the Drug Task Force. (Aff.Opp'n by Michael Daley sworn April 11, 1995.) Clearly nonexistent documents cannot be produced.

■■■■■ The subpoena also required production of grand jury transcripts relating to prosecutions of all five plaintiffs. New York state protects state grand jury proceedings as secret. N.Y.Crim.Pro.Law § 190.25 (McKinney 1993). A witness, however, may disclose his own grand jury testimony. *Id.* Further, disclosure of secret grand jury proceedings is criminal. N.Y.Penal Law § 215.70 (McKinney 1988). Federal grand jury proceedings are also secret. Fed. R.Crim.P. 6(e)(2). Violation of the secrecy rule is punishable by contempt of court. *Id.*

■■■■ A federal civil litigant may access federal grand jury records only upon a showing of particularized need. *United States v. Sells Engin., Inc.,* 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983). The standard for determination is that the material is needed to avoid a possible injustice in another judicial proceeding, the need for disclosure is greater than the need for continued secrecy, and the request is structured to cover only material so needed. *Id.* (citing *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979)). The party seeking disclosure has the burden of showing that the need for the material outweighs the public interest in secrecy. *Id.*

■■■ Likewise, a federal civil litigant should have access to state grand jury testimony only upon a showing of particularized need. This becomes clear when considering that the secrecy requirement protects prospective witnesses, prevents flight of the accused, prevents the accused from attempting to influence the jurors, and protects the accused who are exonerated by the grand jury. Furthermore, secrecy in the state grand jury system serves the same purposes as in the federal system.

■■■ Thus, plaintiffs here have the burden of showing that the material is needed to avoid a possible injustice in this proceeding, the need for disclosure is greater than the need for continued secrecy, and the request is structured to cover only material so need-

ed. *See Sells Engin., Inc.,* 463 U.S. at 443, 103 S.Ct. at 3148. Plaintiffs argue that the grand jury testimony is required to rebut the presumption of probable cause which arose as a result of the grand jury indictments. *See Colon v. City of New York,* 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983). However, plaintiffs fail to make any showing of particularized need. Further, plaintiffs have had the opportunity to depose Dillon, and they give no reason why the information they need could not be obtained through that or some other source. Thus, disclosure of the grand jury minutes is unwarranted.

### B. Federal Bureau of Investigation

■■ Plaintiffs subpoenaed the FBI to produce "The whole investigatory file of Edward John Dillon regarding criminal charges from 1988–1991, Indictment # : 91–00290, including all documents, recordings, tapes, notes, memorandum, papers, photographs, video tapes, correspondence." The FBI objected on the basis that the requested material was confidential, and the Privacy Act, 5 U.S.C. § 552a, prohibited disclosure absent a court order or consent of the individual who was the subject of the investigation. The FBI's response to this motion indicated that the motion was limited to a "specific modification" set out in a March 29, 1995, letter by plaintiffs' attorney. That letter states, in part, "We are seeking tape recordings including NAGRA tape recordings of conversations and transcripts of those tape recordings. Apparently, these conversations were either with or in the presence of Defendant Edward John Dillon."

Plaintiffs' affidavits in support state that the "information is essential to the proper prosecution and presentment of my claims in this case and are material and necessary for the prosecution herein." However, plaintiffs provide no authority under which this court may order disclosure of investigative records protected by the Privacy Act.

### C. County of Herkimer

Plaintiffs ask the court to compel defendant County to respond to discovery requests, and for sanctions and attorneys fees.

The County opposes and also asks for sanctions and attorneys fees. The County indicates that these discovery requests pertain to records, documents, and information relating to the Task Force, and that such materials do not exist. Further, many of the requests were for materials held by the Village, and which were provided by the Village. Documents which are nonexistent or not in the possession of the County cannot be produced by the County.

## CONCLUSION

Accordingly, it is

ORDERED, that

1. defendant County of Herkimer's motion for summary judgment (docket no. 45) is GRANTED, and the claims against it are DISMISSED;

2. the summary judgment motion of defendants Edward John Dillon, Gregg DeLuca, Village of Herkimer, and Village of Herkimer Police Department (docket no. 37) is GRANTED with respect to the malicious prosecution claims, and the malicious prosecution claims are hereby DISMISSED;

3. the summary judgment motion of defendant Village of Herkimer (docket no. 37) is GRANTED with respect to all state law claims brought against it by plaintiff Lester Brown and the state law claims of Lester Brown are hereby dismissed;

4. the summary judgment motion of defendants Edward John Dillon, Gregg DeLuca, Village of Herkimer, and Village of Herkimer Police Department is DENIED with respect to the remaining claims;

5. plaintiffs' motions to compel discovery against the Herkimer County District Attorney's Office (docket no. 63), the Federal Bureau of Investigation (docket no. 62), and the County of Herkimer (docket no. 42) are DENIED in their entirety;

6. the motions for sanctions and attorneys fees of all parties (docket nos. 42, 50) are DENIED;

7. the default judgment against defendant Edward John Dillon (docket no. 24) is vacated and he shall serve an answer to the complaint within 20 days of the filing of this order; and

8. this action is set for trial September 6, 1995, in Utica, New York.

IT IS SO ORDERED.